No. 11,309.

THE STANDARD OIL COMPANY *v.* COMBS, TREASURER.

TAXES.—*Situs of Chattels.*—*Ownership by Non-Resident.*—Staves purchased by a citizen of another State, remaining in this State to receive a finishing process before shipment to another State, are taxable in this State.
SAME.—*Constitutional Law.*— Such taxation is not a regulation of commerce, nor is it a tax on exports, within the meaning of the National Constitution.

From the Perry Circuit Court.
*R. S. Taylor* and *H. J. May,* for appellant.
*C. H. Mason,* for appellee.

ELLIOTT, C. J.—On the 20th day of March, 1880, the appellant contracted with J. A. McGregor for the purchase of 3,000,000 staves, and on the 20th day of September following for 1,000,000 more. The contracts, as originally written, provided that McGregor should manufacture the staves and deliver them at the landing in Pittsburgh, Pennsylvania, where they were to be inspected and paid for, but a modification of the contracts was subsequently made, by which it was

agreed that McGregor should deliver to the appellant, at its stave yards in Perry county, Indiana, the staves contracted for, where they were to receive a finishing process called " bucking," and when " bucked " they were to be shipped to the appellant at Pittsburgh. The original contracts provided that on inspection at Pittsburgh the staves should be paid for at the rate of $26 per 1,000, and the contracts as modified provided that when the staves were cut and piled up the appellant should advance on the purchase price $12 per thousand for the staves in the rough, and $4 more when they were " bucked." The term " bucking " signifies that part of the process of manufacture in which the rough staves are put through a machine called a " bucker," and by which they are cut to a uniform thickness, the surface partially smoothed and a slight convexity of form produced. Under these contracts the staves were in the appellant's yards in Perry county on the 1st day of April, 1881, and taxes were assessed upon them.

The appellant's counsel thus state the question presented by the record : " Were the staves, of which the appellant had thus become the owner, and which happened to be in Perry county on the 1st day of April, 1881, subject to taxation in that county under the laws of Indiana ? "

Property in the course of transit through this State, and here only for the purpose of transportation, is not subject to taxation. Standard Oil Co. v. Bachelor, 89 Ind. 1 ; State v. Carrigan, 39 N. J. L. 35. If, however, the property is here for a different purpose, it may be subject to taxation by our laws, although its owner may reside in another State. There is a difference between property of a tangible nature and choses in action, for property of the former character is liable to assessment wherever it has a situs; while taxes on choses in action are, as a general rule, leviable against the owner under the laws of the State of his domicile. Herron v. Keeran, 59 Ind. 472 ; S. C., 26 Am. R. 87 ; Burroughs Tax., section 40 ; Cooley Tax. 14 ; Dyer v. Osborne, 11 R. I. 321.

The property of the appellant was of a tangible nature, and

was in this State for the purpose of undergoing, while here, a partial finishing process, and it can not be regarded as having been in the course of transit, nor as here for a mere temporary purpose. Property within the State for the purpose of undergoing any part of the process of manufacture is here for more than a temporary purpose connected with its transportation. The *situs* of the property does not depend upon the extent of the work that is to be done upon it, for, if it is here to be put through any of the stages in the process of manufacture, it is here for a purpose which legitimately subjects it to taxation. It can not be justly asserted that property within the State for the purpose of undergoing a part of the process of manufacture is here for a mere temporary purpose, or for the purpose of transportation. The conclusion we have stated seems clear upon principle, but authorities are not wanting. In *Rieman* v. *Shepard,* 27 Ind. 288, the court said : " In the case under consideration, the property was not in transit through the county of Vigo. It was brought there, not for immediate re-shipment, but that money, labor and skill might be there expended upon it, to enhance its value and change its condition as a merchantable commodity. While there, and undergoing this change in its condition, it, as property, had a *situs* within the State and was under the protection of its laws."

The case of *Powell* v. *City of Madison,* 21 Ind. 335, holds, as does the preceding case, that property while within this State for the purpose of undergoing a process to prepare it for market in an improved or changed form, is subject to taxation. Speaking of goods *in transitu,* the Supreme Court of Illinois says : "Goods or property are, technically, *in transitu* when they are passing from one place to another, which was not the case with this grain. It had not commenced its transit from one place to another ; " and it was held that grain bought by an agent on commission was subject to taxation. *Walton* v. *Westwood,* 73 Ill. 125. In the case of *Ogilvie* v. *Crawford County,* 7 Fed. R. 745, the court held, as we did in *Standard*

*Oil Co.* v. *Bachelor, supra,* that property ready for transpor-. tation should be regarded as *in transitu,* and exempt from taxation, but said : " There must be in my judgment a purpose to ship immediately, or at least as soon as transportation can be conveniently obtained, followed by actual shipment in a reasonable time, in order to exempt the property from taxation."

The Supreme Court of California, in *People* v. *Niles,* 35 Cal. 282, said that cattle brought into a county for pasturage were not there transiently, but were there for such a purpose as subjected them to taxation. A similar doctrine was declared in *Hardesty* v. *Fleming,* 57 Texas, 395.

There is, as is obvious from what we have said, a radical difference between this case and the case of *Standard Oil Co.* v. *Bachelor, supra,* for, in that case, nothing was to be done to the property in this State, it was ready for shipment and the owner intended to ship it as soon as means of transportation could be procured ; while in the present case the property was not ready for shipment, nor was it intended to be shipped until subjected to a process changing its form and enhancing its value. The question of intent is a material one, for great abuse would grow up if property might be accumulated without the intention to ship at once, or as soon as, by reasonable diligence, means of transportation could be obtained. The materiality of the intention to ship was noted in *Ogilvie* v. *Crawford County, supra,* where it was said : " This allegation of intention is essential, because otherwise a purchaser might crib his corn on a railway with no purpose of immediate shipment, but for the purpose of awaiting the future course of the markets, or with intent to evade taxation ; in which cases the transit would, in my opinion, be treated as at an end, for the time being at least." The intention of the buyer in this case was to keep the property within this State for a definite purpose, and not to ship it until that purpose had been accomplished. While it was here awaiting the execution of that purpose, it was within the protection of our laws, and must

bear its share of the public burdens.   Judge Story says: "A nation within whose territory any personal property is actually situate, has as entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situate there."   Story Conflict of Laws, section 550. The authorities sustain this doctrine.   *Ames Iron Works* v. *Warren,* 76 Ind. 512; S. C., 40 Am. R. 258; *Green* v. *Van-Buskirk,* 7 Wall. 139; *Clark* v. *Tarbell,* 58 N. H. 88.

Property in this State for the purpose of being subjected to a process essential to its fitness for sale or use is situated here, no matter what may be its ultimate destination.   All property in a mill or factory owned by non-residents is situated here while work or skill is being expended upon it, although the purpose for which it was bought was to prepare it for foreign markets.   Cotton or wool in a New England mill or factory for the purpose of being manufactured into fabrics is situated there, wherever its owner may reside, or whatever he may intend to do with it after the manufacturing process is completed, and what is true in such a case is equally so in the present.

A statute subjecting to taxation property bought in this State, and kept here for the purpose of undergoing a partial process of manufacture, is not in conflict with that provision of the National Constitution which provides that Congress shall have power " To regulate commerce with foreign nations, and among the several States."   Constitution U. S., article 1, section 8.   There is, in such a case, no interference with inter-state commerce ; the State does no more than exercise an attribute of sovereignty over. personal property within its dominion, and does not usurp any power belonging to Congress.   If it be true that a State can not tax property in such a case, then wheat sent here to be manufactured into flour in our mills can not be taxed, although it is situate within our territory and is within the protection of our laws. This position of counsel is not supported by principle, nor is it in harmony with the adjudged cases.   Judge Cooley says:

" But a tax on property that may be the subject of commerce under congressional legislation, is not a tax on commerce. Neither is a tax on property that has been the subject of such commerce, where it is taxed only as property, and in common with all other property within the State." Cooley Tax. 62. Coal was brought from Pennsylvania to Louisiana for sale, taxes were assessed against it in the latter State, and it was held that the statute authorizing the tax did not violate the constitutional provision of which we are speaking. *Brown* v. *Houston,* 33 La. An. 843; S. C., 39 Am. R. 284.

The statute declares that taxes shall be levied upon property as property, and does not discriminate against any person, or any class of persons, and is valid under the decisions of the Supreme Court of the United States.

The principle established by the decisions of that court is, that the taxing power of the State may be exercised upon property within its territory, although commerce and its instruments may be indirectly affected, but that no discrimination can be made in favor of the citizens of one State in matters affecting inter-state commerce, nor can there be any regulation of commerce. *County of Mobile* v. *Kimball,* 102 U. S. 691; *Webber* v. *Virginia,* 103 U. S. 344; *Machine Co.* v. *Gage,* 100 U. S. 676; *Cook* v. *Pennsylvania,* 97 U. S. 566; *Waring* v. *Mayor,* 8 Wall. 101; *Pervear* v. *Com.* 5 Wall. 475; *License Tax Cases,* 5 Wall. 462; *McGuire* v. *Com.,* 3 Wall. 387; *Brown* v. *Maryland,* 12 Wheat. 419. Many acts of legislation indirectly affecting commerce have been upheld, and the general rule is that if the legislation does not assume the form or effect of a regulation of commerce, it will not violate the National Constitution. *Munn* v. *Illinois,* 94 U. S. 113; *Sherlock* v. *Alling,* 93 U. S. 99; *State Tax Case,* 15 Wall. 284; *Cooley* v. *Board, etc.,* 12 How. 299; *Harrigan* v. *Connecticut River, etc., Co.,* 129 Mass. 580; S. C., 37 Am. R. 387; *Western Union Tel. Co.* v. *Pendleton,* 95 Ind. 12.

The State has power to lay taxes on property bought within its limits, and intended to be ultimately transported to an-

other State for sale or use. A statute providing for the assessment of taxes in such a case is not in conflict with the provision of the Constitution of the United States which declares that " No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws." Article 1, section 10, Constitution of U. S. This provision does not apply to articles brought into one State from another, nor to articles intended to be carried out of one State to another, but applies only to intercourse with foreign nations. *Woodruff* v. *Parham,* 8 Wall. 123; *Hinson* v. *Lott,* 8 Wall. 148; *Machine Co.* v. *Gage, supra; Brown* v. *Houston, supra; City of New Orleans* v. *Eclipse, etc., Co.,* 33 La. An. 647; S. C., 39 Am. R. 279; *State* v. *Pinckney,* 10 Rich. (Law) 474; *Harrison* v. *Mayor, etc.,* 3 Sm. & M. 581.

