### JOHN W. CLAMPITT v. JOHNSON & MILLER.

Decided November 24, 1897.

**Taxation—Cattle—County Where Situated.**

Owners of cattle held on a ranch in R. County, owing to drouth, contracted with land owners in S. County for their pasturage there, and there kept them from October 1, 1893, to May 1, 1894, intending to move them back as soon as there was sufficient pasturage in R. County. *Held,* that the cattle were situated in S. County on January 1, 1894, within the meaning of section 11, article 10, of the Constitution, and subject to taxation there for the year 1894.

APPEAL from County Court of Runnels. Tried below before Hon. CHARLES H. WILLINGHAM.

*Cochran & Hill,* for appellant.—The court erred in rendering judgment for plaintiffs perpetuating the temporary injunction heretofore issued in this cause, and perpetually enjoining defendant from executing the tax execution issued by the tax collector of Sterling County, for the taxes due Sterling County on plaintiffs' cattle for 1894, because under the evidence shown by the agreed statement of facts upon which this cause was tried, plaintiffs' cattle were situated in said Sterling County on January 1, 1894, and under the Constitution and statutes of Texas, said cattle were taxable in Sterling County for the year 1894. Const., art. 8, sec. 11; Sayles' Rev. Stats., arts. 4662, 4674, 4676; Acts 1889, p. 29 (Rev. Stats. 1895, art. 5070); Hardesty Bros. v. Fleming, 57 Texas, 395; Cattle Co. v. Faught, 69 Texas, 402; Nolan v. Ranch Co., 81 Texas, 315; People v. Niles, 35 Cal., 282; Oil Co. v. Combs, 96 Ind., 179.

KEY, ASSOCIATE JUSTICE.—This suit was filed by appellees on November 2, 1895, to restrain appellant, as sheriff and tax collector of Runnels County, from making a sale of fifty head of cattle levied upon under a tax execution issued by the sheriff and tax collector of Sterling County, for the sum of $150.24, State, county, and district school taxes due by appellees for the year 1894 on 1378 head of cattle assessed against them in said Sterling County for said year.

Appellant answered by general and special exceptions, general denial, and special answer setting up appellees' liability for the taxes in Sterling County, and praying judgment for the same. The case was submitted to the court on an agreed statement of facts, and judgment was rendered for appellees, perpetuating the injunction, to which appellant excepted and gave notice of appeal.

The case was tried upon the following agreement and statement of facts, to wit:

"No. 316, Johnson & Miller v. John W. Clampitt. Suit pending in the County Court of Runnels County, Texas.

"It is agreed, by and between plaintiffs and defendant, that the one question involved in this suit is whether the cattle mentioned in plaintiffs' original petition were situated and taxable in Sterling County, Texas, on the 1st day of January, 1894. If under the facts hereinafter set forth they were not situated and taxable in Sterling County, then judgment shall be rendered in favor of plaintiffs, perpetuating the injunction granted herein, but if under said facts the cattle were situated and taxable in Sterling County, then judgment shall be rendered for defendant and against plaintiffs for the amount of the taxes shown by copy of tax execution attached to plaintiffs' original petition, with legal interest thereon, and from any judgment rendered herein, either party may appeal."

Agreed Statement of Facts.—Plaintiffs resided in Runnels County, Texas, on the 1st day of January, 1894, and long prior thereto, conducting a ranch business with pastures situated in said county, on which they pastured a large number of cattle. That in the fall of 1893, on account of the drouth and short range in Runnels County, they were compelled to procure range elsewhere for their cattle. That on September 16, 1893, they made the following agreement with Robertson & Harris for the lease of McKenzie and Kennedy pastures in Sterling County, in which to pasture their cattle, to wit:

"*The State of Texas, County of Mitchell.*—An agreement entered into this 16th day of September, 1893, between A. B. Robertson and John Harris, both of Mitchell County, Texas, composing the firm of Robertson & Harris, parties of the first part, and J. B. Johnson and A. M. Miller, composing the firm of Johnson & Miller, of Runnels County Texas, parties of the second part, witnesseth: That in consideration of the sum of one dollar per head the said Robertson & Harris agree to pasture 1500 head of cattle, more or less (the number yet to be agreed upon), from October 1, 1893, until May 1, 1894, in what is known as the McKenzie and Kennedy pastures, in Sterling County, Texas, for the said parties of the second part, and the said Robertson & Harris further agree that they will repair the two wells and windmills in said pasture and put same in good running order, also do all necessary repairs on the tanks at said wells, and that they will build a good substantial wire fence between the McKenzie pasture and the town of Sterling City, cutting said town off from said pasture. And they further agree that they will round up said pastures at once and put out all stock that may be in same without legal right. It is further agreed and understood that the said Johnson & Miller are to have the use and occupancy of the house, well, and 560 acres of section 25 in block 14, S. P. R. R. Co. survey, and that it is included in this contract, and that the use of same runs during the time of above

mentioned pasturage. In consideration of the covenants on the part of the parties of the first part hereinbefore mentioned, the said parties of the second part agree that they will stock said pastures with cattle, putting in as many as said pastures will safely carry, and pay to the said parties of the first part $1 per head for all· cattle that may be put in said pastures, paying one-half of said amount when the cattle are put into said pastures, and the remainder when they are taken out, on or before the 1st day of May, 1894. And it is hereby understood that a mortgage is retained on the cattle so pastured for the payment of said sum. And it is agreed that at the expiration of this lease that the said Johnson & Miller shall have the refusal of these pastures for another year. And it is further agreed that the said parties of the first part are to put the fences around said pastures in repair, and· said Johnson & Miller agree to have same kept in repair, and turn same back in as good shape as received, also the windmills and wells in said pastures. 'Calves up to 100 head free. In witness hereunto we set our hands the day and year first above written.

　　　　　　　　　　　　　　"ROBERTSON & HARRIS.
　　　　　　　　　　　　　　"JOHNSON & MILLER.
"Witness: G. D. HINES.

"September 16, 1893: Received on the within contract, one hundred ($100) dollars, being part of the first payment on said cattle.

　　　　　　　　　　　　　　"ROBERTSON & HARRIS."

In pursuance of said contract, plaintiffs on the 2d day of November, 1893, moved 1378 head of cattle from their range in Runnels County and put 978 of them in the said McKenzie and Kennedy pastures, and 400 in an adjoining pasture under a similar contract, all in Sterling County, and kept said cattle there until the last day of April, 1894, when they moved them back to Runnels County, the drouth having continued in Runnels County to that time. It was the purpose of plaintiffs when they moved said cattle to Sterling County, to keep them there during the period of their contract, or move them back as soon as there was sufficient pasturage in Runnels County. During the time plaintiffs had said cattle in Sterling County they had possession and control of said McKenzie and Kennedy pastures jointly with other parties, and kept men in charge of their cattle and to look after and keep said pastures in repair.

Plaintiffs refused in April, 1894, to render said cattle in Sterling County, but on March 3, 1894, upon the demand of the assessor of Runnels County they rendered them for taxes to the assessor of Runnels County, and paid the taxes on them in Runnels County. The assessor of Sterling County, after plaintiffs refused to render said cattle, assessed the same in Sterling County in regular order, placing said rendition properly on the rolls, the unrendered rolls of said county. Plaintiffs having refused to pay the taxes on the property as assessed in Sterling County, the tax assessor of said county issued his execution in regular form and sent it to John W. Clampitt, defendant, the sheriff and tax collector of Runnels County, who levied upon the cattle described in plaintiffs' peti-

tion, when the plaintiffs sued out the injunction in this case, executing a bond, as required by law, for $325, with Chas. S. Miller and T. J. Stocks as sureties.

*Opinion.*—The case is submitted in this court on the following assignment of errror: "The court erred in rendering judgment for plaintiffs, perpetuating the temporary injunction heretofore issued in this cause, and perpetually enjoining the defendant from executing the tax execution, issued by the tax collector of Sterling County for the taxes due Sterling County on plaintiffs' cattle for 1894, because under the evidence shown by the agreed statement of facts, upon which the case was tried, plaintiffs' cattle were situated in said Sterling County on January 1, 1894, and under the Constitution and statutes of Texas, said cattle were taxable in Sterling County for the year 1894."

Section 11, article 10, of the Constitution declares that all property, whether owned by persons or corporations, shall be assessed for taxation, and the taxes paid in county where situated. This provision of the Constitution has been carried into the statute law of the State (Revised Statutes, article 5068). Therefore, if the cattle in question were situated in Sterling County within the meaning of the constitutional provision referred to, on the 1st day of January, 1894, then they were subject to taxation for that year in that county, and the judgment appealed from is erroneous.

In Hardesty v. Fleming, 57 Texas, 395,.cattle from the Indian Territory had drifted across the Texas line into Hansford County upon the open range, and the owner kept employes in said county, about eight miles from the State line, to prevent the cattle from going further south. The cattle remained in Hansford County about five months, and were there on the 1st day of January. In considering the question of the owner's liability for taxes in Hansford County, the Supreme Court said: "It appears that these cattle were in the State for about five months, including the 1st day of January, and that they were not passing through the State, nor brought here for the purpose of trade. There is nothing in the record that would necessarily lead to the conclusion that these cattle were not, in the meaning of the law, situated in Hansford County on the 1st day of January, 1880."

In People v. Niles, 35 California, 282, it was said that cattle held in a county for pasturage were not there transiently, and were subject to taxation in said county. See also Cattle Co. v. Faught, 69 Texas, 402; Nolan v. Ranch Co., 81 Texas, 315; Standard Oil Co. v. Combs, 96 Ind., 179.

It is quite certain, from the testimony in this case, that appellees moved their cattle to Sterling County intending to pasture them there until the following spring. The drouth in Runnels County had so seriously affected the range as rendered it necessary for them to procure a range elsewhere. The cattle were moved in November, and it is a matter of common knowledge that new grass does not spring up and grow to any considerable extent in this State in the months of November, December,

January, and February. Hence we say that it is reasonably certain that appellees' purpose was to keep the cattle in Sterling County from the time they placed them there until the following spring, and this purpose was carried out, as shown by the agreed facts; and while live stock may be in a particular county under such circumstances as will not render them subject to taxation in said county, as for instance while being driven through the county, or held there temporarily for the purpose of sale or trade, still we are satisfied that the cattle referred to in this case were situated in Sterling County on the 1st day of January, 1894, within the meaning of the tax laws, and were therefore subject to taxation in said county.

In closing this opinion, we desire to acknowledge the material aid derived from the pointed brief and able argument filed by counsel for appellant.

The judgment of the trial court will be reversed and judgment here rendered for appellant for $150.24, with interest thereon at 6 per cent per annum from the 1st day of January, 1895, and all costs of this court and the court below.

*Reversed and rendered.*