MIAMI COAL COMPANY *v.* FOX, COUNTY TREASURER, ET AL.

[No. 25,537. Filed April 29, 1931. Rehearing denied January 5, 1932.]

*Hays & Hays* and *Gallagher, Kohlsaat, Rinaker & Wilkinson,* for appellant.

*Beasley, Aikman, O'Brien & Beasley* and *W. H. Beeler,* for appellees.

TRAVIS, J.—This is a suit in equity by Miami Coal Company against the treasurer and auditor of Vermillion County, Indiana, to permanently enjoin these officials from collecting or attempting to collect a tax on intangible personal property owned by the company,

certified by the State Board of Tax Commissioners of Indiana to the auditor of Vermillion County, Indiana, for taxation for the year 1923, to declare the tax void, and to cancel, set aside, and annul the tax assessment.

The issue made by appellees' general denial to appellant's amended complaint was submitted to the court. Its finding was for the appellees, and its decree that plaintiff (appellant) take nothing.

The court overruled appellant's motion for a new trial, the causes presented as errors being that the decision of the court is not sustained by sufficient evidence, is contrary to law, and contravenes the Fourteenth Amendment to the Constitution of the United States, in that it upholds the taking of appellant's property without due process of law, and is a denial to appellant of the equal protection of the laws.

The evidence consists of an agreed stipulation of facts, three exhibits of documentary evidence, the testimony of the vice-president of appellant, who was in charge of production of coal, and testimony by an accountant who testified concerning the intangible personal property of appellant upon which the tax assessment was based.

The facts, as simplified for the purposes of appeal, are that the company is a corporation, organized in Indiana April 26, 1901, from which date it has been such corporation, engaged in the mining, production and sale of coal, and was such and so engaged on March 1, 1923. May 25, 1901, the company was licensed by the State of Illinois to transact business in that state, pursuant to its laws, as a foreign corporation and not as a domestic corporation. Appellees Homer Fox and Mortimer Lewis were treasurer and auditor, respectively, of Vermillion County, Indiana, on December 12, 1925, the date the amended complaint was filed.

Appellant was engaged March 1, 1923, and for at

least 20 years prior thereto, and continuously thereafter, in the mining, production and sale of coal produced from mines located in Indiana. Appellant owned on March 1, 1923, intangible personal property, consisting of bills and accounts receivable, over and above all legal deductions, of the true cash value of $1,060,565; and appellant was assessed with such bills and accounts receivable as personal property in the same amount in Vermillion County, Indiana; and the auditor of Vermillion County entered such assessment for $1,060,565, and has extended the tax thereon, as an assessment due and owing from appellant for 1923. Thereafter the tax duplicate of the record of the tax was delivered to the county treasurer for collection. The tax has not been paid, on which account the treasurer is threatening to and will, unless enjoined by the court, proceed to collect from appellant so assessed. The foregoing are facts agreed to and stipulated by the parties.

Documentary evidence consisted of articles of incorporation of appellant in Indiana, April 26, 1901, which showed the object of incorporation, among other things, to be the mining and selling of coal, and that the principal place of business of the corporation shall be located in Vigo County, Indiana; also annual report of appellant filed in the office of Secretary of State of Illinois. This report to the Secretary of State of Illinois states the name of the official of the corporation who made the report, the location of the principal business office of the corporation in Illinois to be in the city of Chicago; the names and residences of the officers and directors of the corporation, all of whom reside in Chicago, Illinois, except two directors who reside in Indiana; that the corporation had not acquired title to any real estate in securing any debt or liability due it; that the corporation had not entered into any illegal pool, trust, agreement, combination, confederation and under-

standing in restraint of trade in contravention of any act of Illinois concerning such matters; the amount of authorized capital stock of the corporation to be $350,-000; that the corporation wished to pay a franchise tax based upon its entire authorized capital stock; and, in the event that the corporation is assessed a franchise tax upon its entire authorized capitalization, it will be paid promptly. No other statements were made or information given by the corporation concerning itself in the last-mentioned and foregoing report to the Secretary of State of Illinois. There was documentary evidence of proceedings before the State Board of Tax Commissioners of Indiana in relation to the corporation, whereby this board ordered the final assessments for the year 1923 to be as follows: Vermillion County on personal property in Clinton City $1,275 assessment by county board, and $1,061,840 assessment by the state board; in Vigo County, on personal property for Pierson Township $106,500, and for Fayette Township $505,510. The testimony showed that the sole business of the corporation in Indiana was the production and shipping of coal. Since the beginning of business by the corporation, all sales of coal have been made in its office in Chicago, where all the books of account are kept, in which are made the entries for the sale of coal, where all contracts for the sale of coal are made, and where all accounts are due and payable. The corporation has never had an agent or office in Indiana authorized to sell coal or collect accounts. The price of the coal is fixed by the secretary of the corporation in Chicago. No funds of the corporation enter Indiana except money transmitted from the Chicago office for payment of the miners' payrolls. All "bills" for supplies and materials are paid at the corporation's office in Chicago. The officers' salaries are paid at the Chicago office, as also are the dividends to the owners

of the capital stock of the corporation. Shipments of coal are from the mines direct to the purchasers, upon orders issued from the Chicago office, and reports of shipments are made to the Chicago office from the mines. No records of the corporation are kept in Indiana, except duplicates of the payrolls and copies of shipments. The corporation paid taxes in Indiana for the year 1923, in Vermillion County, in the sum of $6,779.30, in Vigo County $11,058.90, in Knox County $1,020.33, and in Parke County $213.62, all as shown by the original vouchers and tax receipts. The only evidence introduced at the trial of this suit was by appellant to sustain its bill of complaint.

The trial was had upon the stipulation that the property sought to be taxed was intangible personal property consisting of bills and accounts receivable over and above all legal deductions, of the true cash value of $1,060,565.

Inasmuch as appellant admits by stipulation that it has not paid the tax cast against the assessed valuation of the property, to prevail in its suit to enjoin the collection of the tax, it must show by allegation and proof that the property upon which the tax is assessed is not subject to taxation. §14034 Burns 1926; *McCrory* v. *O'Keefe* (1904), 162 Ind. 534, 536, 70 N. E. 812.

Appellant maintains that the intangible personal property, though owned by it, a domestic corporation, is not subject to taxation because such property, according to the record, has a business situs in Illinois, and therefore does not have a taxable situs in Indiana.

Testimonial proof of ultimate facts, if such may be considered upon appeal, that the bills and accounts receivable which are assessed for taxation are from the sale by appellant of its coal at its legally designated place of business stipulated to be in Illinois, and at

which place of business the sole records of such sales and of the bills and accounts receivable are made and kept, and the place where such bills and accounts receivable are due and payable, and are paid, is admitted by appellees in their brief in presentation of their proposition that: "Even though intangible personal property owned by a resident of Indiana acquires what is termed a business situs of that character does not deprive the property of its situs for taxation purposes in the state of Indiana," under which the point is made that: "The rules announced as to personal property acquiring a situs outside Indiana, such as will be sufficient to take such property beyond the jurisdiction of Indiana taxing authorities, do not apply to intangible personal property." The evidence is unchallenged and undisputed.

The question presented is whether the laws of Indiana require the assessment of the bills and accounts receivable owned by appellant, even though they have a business situs in Illinois. This question has not been presented to this court before for decision. The decision of this case requires a construction of so much of the revenue laws of Indiana as pertain to the questions presented.

The sections of the revenue laws (Acts 1919, ch. 59, p. 198, §14032 *et seq.* Burns 1926) which are presented by the briefs and which are considered in the construction of the sections or parts thereof necessary to a decision of the questions presented, are, viz: Section 3. "All property within the jurisdiction of this state, not expressly exempted, shall be subject to taxation. All property of every kind and nature, both real and personal, and wherever situated, owned or possessed, and subject to taxation within the State of Indiana, shall be assessed and valued for taxation purposes," etc. (§14034 Burns 1926.)

Section 10. "All personal property shall be assessed to the owner in the township, town or city of which he is an inhabitant on the first day of March of the year for which the assessment is made," etc. (§14050 Burns 1926.)

Section 11. "All corporate property, including capital stock and franchises, except where some other provision is made by law, shall be assessed to the corporation as to a natural person, in the name of the corporation. The place where its principal office in this state is situated shall be deemed its residence, but if there be no principal office in the state, then such property shall be listed and taxed at any place in the state where the corporation transacts business," etc. (§14051 Burns 1926.)

Section 61. "On the first day of March of each year, or as soon thereafter as practicable, and before the fifteenth day of May, the assessor shall call upon each person required by this act to be assessed, and furnish him or her with the proper blanks for the purpose, and thereupon, such person shall make to such assessor a full and correct description of all the personal property of which such person was the owner on the first day of March of the current year," etc. (§14100 Burns 1926.)

Section 63. "Every person required by this act to make or deliver such statement or schedule shall set forth an account of the property held or owned by him as follows:

"Personal Property—Credits

"First. . . .

"Second. All bonds, notes, mortgages, accounts, demands, claims, and other indebtedness owing to such person, whether such indebtedness is owing from individuals or from corporations, public or private, and whether such debtors reside within or without the state.

"Third. All bona fide indebtedness owing to such person, which shall be held to mean notes and accounts only." (§14102 Burns 1926.)

The legal proposition that personal property may obtain an actual situs different from the domicile of its owner and designated by the words "business situs," has long been recognized in Indiana. *City of New Albany* v. *Meekin* (1852), 3 Ind. 481, 56 Am. Dec. 522; *Herron* v. *Keeran* (1877), 59 Ind. 472, 26 Am. Rep. 87; *Standard Oil Co.* v. *Bachelor* (1883), 89 Ind. 1; *Eversole* v. *Cook* (1883), 92 Ind. 222; *Senour* v. *Ruth* (1895), 140 Ind. 318, 39 N. E. 946; *Buck* v. *Miller* (1896), 147 Ind. 586, 45 N. E. 647, 47 N. E. 8, 62 Am. St. 436, 37 L. R. A. 384; *Hathaway* v. *Edwards* (1908), 42 Ind. App. 22, 85 N. E. 28.

It has long been recognized in other jurisdictions that not only tangible property may gain a business situs separate from that of the domicile of its owner, but also that intangible property in the form of *choses in action* may obtain such a situs separate from the domicile of its owner. *City of New Orleans* v. *Stemple* (1899), 175 U. S. 309, 20 Sup. Ct. 110, 44 L. Ed. 174; *Bristol* v. *Washington County* (1900), 177 U. S. 133, 20 Sup. Ct. 585, 44 L. Ed. 701; *Metropolitan Life Ins. Co.* v. *City of New Orleans* (1907), 205 U. S. 395, 27 Sup. Ct. 499, 51 L. Ed. 853; *Liverpool, etc., Ins. Co.* v. *Board of Assessors* (1911), 221 U. S. 346, 31 Sup. Ct. 550, 55 L. Ed. 762, L. R. A. 1915C 903; *Crane Co.* v. *City Council of Des Moines* (1929), 208 Iowa 164, 225 N. W. 344.

The personal property of appellant under consideration is composed exclusively of bills and accounts receivable. Bills receivable generally are promissory notes, bills of exchange, or other written instruments for the payment of money at a future day. *State, etc.,* v. *Robinson* (1881), 57 Md.

486, 501; 1 Bouvier, Law Dict. (Rawles Third Rev.) 363. A *chose in action* is an elusive thing in law, when it comes to the point of holding it subject to a concrete definition, but, for illustration here, it may be noted that the tendency in judicial thought and determination is to regard *choses in action,* such as bonds and other specialties, as being the property itself; and, having such a character, such personal property may obtain such a permanent situs sufficient to uphold a tax upon it where such permanent situs is different from that of the domicile of the owner. *Metropolitan Life Ins. Co.* v. *City of New Orleans, supra.* Bills, in the ordinary sense, mean, among other things, and as applicable here, accounts of goods sold, and concretely applying the rule to the case at bar, accounts of coal sold. *Newman* v. *San Antonio Traction Co.* (1913), 155 S. W. (Texas Civ. App.) 688, 690. We deduce from the record that the word "receivable" does not qualify the property named "bills." Open accounts or unliquidated accounts are *choses in action. Sere* v. *Pitot* (1810), 6 Cranch (U. S.) 333, 3 L. Ed. 240; *Wilkinson* v. *Wilkinson* (1856), 2 Curtis (U. S. C. C.) 582, Fed. Cas. No. 17,677. The State recognized this through legislative enactment in 1876. 2 R. S. 1876 p. 208. Construing this section of the Civil Code, this Court, although reversing the judgment, in effect construed this law to apply to accounts. *Bay* v. *Saulspaugh* (1881), 74 Ind. 397. This section of the statute was re-enacted in 1881, §512 Civil Code, Acts 1881, §790 Burns 1926.

The property here assessed—bills and accounts receivable—is not so insubstantial that it cannot be localized. If the property assessed were limited to promissory notes, bonds and certificates which evidenced the ownership of corporate capital stock, under authority of judicial opinion, the problem of fixing the situs of such property other than that of the domicile of the

owner could be decided without difficulty or hesitation. *Foresman* v. *Byrns* (1879), 68 Ind. 247. It is, therefore, held that the bills and accounts receivable here under consideration are *choses in action.*

In most of the cases decided by the courts where property has been taxed in a jurisdiction in which it was declared that such property had a situs other than that of the domicile of the owner, such property so taxed was either in the hands of a fiduciary or an agent of the owner. But it has been held in this jurisdiction that the existence of such an agent does not appear to be indispensable. *Buck* v. *Miller, supra.* No good reason presents itself and it is not presented by the briefs that there should be an arbitrary possession of property in the hands of an agent in order to gain a situs other than that of the domicile of the owner. The situation would not be changed if the owner himself controlled, managed and operated his property in the jurisdiction foreign to his domicile. *Commonwealth* v. *B. F. Avery & Sons* (1915), 163 Ky. 828, 174 S. W. 518.

In the case at bar, during the period of its existence, except the first 29 days after its incorporation, appellant has operated one selling agency in a jurisdiction foreign to the jurisdiction of its domicile, where it has sold all of its products, made the price therefor, kept the records thereof, collected the proceeds of its sales and deposited such proceeds in bank, all in such foreign jurisdiction. The operations of appellant in Illinois where it made the sales, gained the collections therefor and kept the records thereof, were neither "sporadic or isolated transactions." Appellant's action in Illinois became general through a continuous course of business of transactions within that state. *Hinckley* v. *County of San Diego* (1920), 49 Cal. App. 668, 194 Pac. 77. A very definite ground upon which the judgment in this case might be affirmed is based upon the common-law

rule made concrete by ancient definition *mobilia sequuntur personam,* which, as stated in judicial opinions, became the law from custom in the Middle Ages. This rule which concerns personal property had quite a universal judicial following both in England and the United States until through the progress of civilization personal property became much more varied in both use and legal contemplation until, as stated by Justice Gray: "In modern times, since the great increase of amount and variety of personal property, not immediately connected with the person of the owner, that rule has yielded more and more to the *lex situs,* the law of the place where the property is kept and used." *Pullman's Palace Car Co.* v. *Pennsylvania* (1891), 141 U. S. 18, 22, 11 Sup. Ct. 876, 35 L. Ed. 613.

From the current of judicial opinion and judgments resulting therefrom as applied to the record in this case, we hold that the property in question, which is the foundation of the assessment made, has a business situs in the State of Illinois.

Next to answer the proposition of appellees, to repeat: "Even though intangible personal property owned by a resident of Indiana acquires what is termed a business situs of that character, does not deprive the property of its situs for taxation purposes in the state of Indiana." To sustain this proposition of appellees, it is necessary to depend upon the legal fiction *mobilia sequuntur personam.* This brings into question the application of justice to aid in answering the proposition. In the early application of law in the determination of legal rights, care was exercised to the end that the many legal fictions known to the law should not work an injury. Appellant, the corporation, by force of statute and judicial opinion, unlike a natural citizen, is unable to change its domicile. §14051 Burns 1926; *Aspinwall* v. *Ohio, etc., R. Co.* (1863), 20 Ind. 492, 83 Am. Dec.

329; *Bank of Augusta* v. *Earle* (1839), 13 Peters (38 U. S.) 519, 588, 10 L. Ed. 274; *Western Union Telegraph Co.* v. *Dickinson* (1872), 40 Ind. 444, 13 Am. Rep. 295. But, by the same token, the corporation, being considered a person in law, may act and be acted upon the same as a natural person, except it be limited by express law. It will not be denied that a natural person domiciled in Indiana may lawfully establish and personally operate in Illinois a sales business, in which sales business he sells merchandise manufactured by himself exclusively; or that a natural person domiciled in Illinois might, with capital accumulated from business operations in the state of his domicile, establish and operate through an agent, or personally, a business in Indiana with such accumulated capital. Judicially, Indiana has no hesitation to hold, in the latter instance, upon the revenue laws, that his wealth so employed here gained a fixed situs, or a "business situs," by virtue of which such property is held to be within the jurisdiction of this state (Indiana) and thereby that it shall be subject to taxation. *Buck* v. *Miller, supra.* The common-law rule based upon this somewhat ancient maxim is that personal property follows the person of the owner and has its situs at his domicile. This view was taken by the court in *Foresman* v. *Byrns, supra,* and in other similar cases in this state. The intangible personal property in question in all of these cases was like the ships of the Southern Pacific Company (*Southern Pacific Co.* v. *Kentucky* [1911], 222 U. S. 63, 32 Sup. Ct. 13, 56 L. Ed. 96). The ships had acquired no situs whatever, and, under the situation, even though tangible property, following this maxim, their only place of legal refuge was the domicile of the incorporated owner. The rule of law that tangible personal property may acquire for itself a fixed situs in a state other than that of the domicile of its owner is an abso-

lute rule. Tangible personal property which has acquired such a situs is immune from taxation, when considered as a form of riches upon which to base a tax *in personam* upon its owner. And such a tax, if so fixed upon its owner in a jurisdiction different from that of the fixed situs of the property, violates the Fourteenth Amendment to the federal Constitution. *Delaware, etc., R. Co.* v. *Pennsylvania* (1905), 198 U. S. 341, 25 Sup. Ct. 669, 49 L. Ed. 1077. The above rule, for the purpose of taxation, has been extended to intangible personal property known as accounts receivable. *Buck* v. *Beach* (1907), 206 U. S. 392, 401, 27 Sup. Ct. 712, 51 L. Ed. 1106, 11 Ann. Cas. 732; *Commonwealth* v. *West India Oil Refining Co.* (1910), 138 Ky. 828, 129 S. W. 301, 36 L. R. A. (N. S.) 295. It has quite recently been held that, where debts have no territorial situs, the rule *mobilia sequuntur personam* applies, whereby such debts are localized at the creditor's domicile for taxation purposes. *Farmers Loan Co.* v. *Minnesota* (1930), 280 U. S. 204, 211, 50 Sup. Ct. 98, 74 L. Ed. 371.

Much depends in the case at bar upon whether or not appellant has a business, under the peculiar definition of that word, in Chicago based upon the facts in this record. *Metropolitan Life Ins. Co.* v. *City of New Orleans, supra; Marshall-Wells Hardware Co.* v. *Multnomah County* (1911), 55 Ore. 469, 115 Pac. 150. If appellant were making the prices of the coal in Indiana, selling the coal in Indiana, entering the accounts in the books in Indiana, and then shipping the books to its office in Chicago, Illinois, and sending the books back to its domicile in Indiana for collection of the accounts, under such a situation, a decision of the court might be entirely different from one under the facts as presented in this case. *Buck* v. *Beach, supra.* Inasmuch as the business of appellant at its office in Chi-

cago has gained a business situs, the bills and accounts receivable are a part of and so intertwined with and affixed to the business of appellant at its foreign office, that a taxing unit in Indiana may not reach into a business situs in Illinois and grasp the intangible thing which is so affixed to a business that it is a part and parcel of it. That characteristic of human integrity, justice, is of controlling influence in the consideration of this case to reach a decision of the questions presented. It is to be seen in many jurisdictions that the taxation of intangible personal property under the legal fiction loses its force in the sole interest of justice when the fixed situs of the property may be different from that of the domicile of the owner. *Poppleton* v. *Yamhill County* (1890), 18 Ore. 377, 23 Pac. 253, 7 L. R. A. 449.

The Constitution of Indiana is silent concerning the foundation of taxation, and therefore the legislative branch of the government, in so far as the Constitution is concerned, is without restraint in the composition of revenue laws. Notwithstanding the absence of restraint, legislation upon the question of revenue for the operation of the government rests upon justice. The foundation of taxation is inherent. *Berry* v. *Windham* (1879), 59 N. H. 288, 47 Am. Rep. 202.

It has been suggested by the Supreme Court of the United States that, if the principles of taxation were homogeneous throughout the country and the individual states, property would be subject to taxation in but one of such jurisdictions. This is the foundation for the inference that property, such as here in question, ought to have one situs and one situs only. Either the gaining of a so-called business situs should emancipate the property from taxation at the domicile of the owner;

or the judicial construction of the principle upon which the so-called business situs is founded should be abolished. *Kidd* v. *Alabama* (1903), 188 U. S. 730, 732, 23 Sup. Ct. 401, 47 L. Ed. 669; *Hawley* v. *City of Malden* (1914), 232 U. S. 1, 34 Sup. Ct. 201, 58 L. Ed. 477, Ann. Cas. 1916C 842.

The contention of appellees under the last question stated is peculiar and unique in contending that intangible personal property may have two situses, one a business situs and the other a taxable situs.

Admitting that the property has a business situs in Illinois and a taxable situs in Indiana, the only foundation for the property being subject to taxation is the ancient maxim *mobilia sequuntur personam*. The seed of this maxim was not begotten by taxation. The rule is but a legal fiction to the effect that for legal purposes the situs or home of personal property is always at the domicile of its owner. But this maxim may not be a premise or used in reasoning to the determination of the situs of the property for the purpose of taxation. This is exemplified by the holding of the United States Supreme Court that the taxation of tangible personal property in the jurisdiction of the domicile of its owner, when it has an established legal situs in another jurisdiction, offends the Fourteenth Amendment to the United States Constitution. *Safe Deposit, etc., Co.* v. *Virginia* (1929), 280 U. S. 83, 92, 50 Sup. Ct. 59, 74 L. Ed. 180, 67 A. L. R. 386. And it has been further held that this principle applies to intangible as well as to tangible personal property. *Marshall-Wells Hardware Co.* v. *Multnomah County, supra*, p. 472. By virtue of the statutes cited, if the same statutes were in force and effect in Illinois, intangible personal property belonging to a person domiciled in Indiana who was connected with the business in Illinois would be taxable in

Illinois under Indiana decisions. *Herron* v. *Kerran, supra; Buck* v. *Miller, supra.*

If the contention of appellees were true, the property could also be lawfully taxed in Indiana. Indiana has assessed for taxation intangible personal property localized in this state, the owner having his domicile in another jurisdiction. In permitting such taxation, as was done with the property in the case of *Buck* v. *Miller, supra,* it is tantamount to saying that the taxation situs of the intangible personal property for the purpose of taxation was within the jurisdiction of Indiana. We cannot, without excluding justice from our conscience, adjudge anything different concerning the property of our own citizens similarly situated in other states. And it does not matter to reach such a conclusion whether such property was taxed in such foreign jurisdiction or not, or even whether it was subject to taxation. Appellees' contention that the property was within the jurisdiction of Indiana subject to taxation even though it gained a business situs in Illinois must be held as not well founded. In the construction of the sections of the public revenue laws considered, it is decided that the power to tax is controlled by §3, *supra* (§14034 Burns 1926), to the effect that to tax a person (here the corporation) the property which is the basis for the tax must be within the jurisdiction of this state. In the enactment of the public revenue law, injustice cannot be imputed as the legislative intent. The legislative intent is to permit the laying of the tax only upon the basis of property that is within the jurisdiction of this state. The bills and accounts receivable are a part of the business of appellant, which business had a permanent situs in Illinois. It is not within the jurisdiction of this state. *State, ex rel.,* v. *Harrington* (1923), 68 Mont. 1, 18, 217 Pac. 681.

Appellant has presented as error that the finding is in contravention of the Fourteenth Amendment to the Constitution of the United States because it deprives appellant of its property without due process of law. The court does not decide the question presented because the case is decided and the decree reversed upon other grounds. *Hart* v. *Smith* (1902), 159 Ind. 182, 64 N. E. 661, 58 L. R. A. 949, 95 Am. St. 280.

The finding of the court below is not sustained by sufficient evidence, and is therefore contrary to law. The motion for a new trial ought to have been sustained. Cause remanded. The court is directed to sustain appellant's motion for a new trial.

Decree reversed.